Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JDM GROUP, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>PASSAIC VALLEY WATER COMMISSION, CITY OF PATERSON, COUNTY OF PASSAIC, and STATE OF NEW JERSEY,<br><br>*Defendants.* | Civil Action No. 18-14028 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter concerns Plaintiff JDM Group, LLC's unpaid water bills, which Plaintiff characterizes as a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c). Plaintiff previously raised the same subject matter in a state lawsuit, which Plaintiff lost. For unexplained reasons, Plaintiff did not challenge the state court judgment on appeal and instead filed the current matter. Specifically, Plaintiff brings a RICO claim against Defendants Passaic Valley Water Commission ("PVWC"), the City of Paterson ("Paterson"), the County of Passaic ("Passaic") (collectively, the "Defendants"), and the State of New Jersey.[1] Currently pending before the Court are three motions to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) brought by PVWC, Paterson, and

---

[1] The status of Defendant State of New Jersey is not clear. It does not appear that Plaintiff requested a summons for the State. D.E. 2. It would appear that sovereign immunity under the Eleventh Amendment would bar suit against the State.

Passaic. D.E. 9-10, 19. The Court reviewed the parties' submissions in support and in opposition,[2] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motions to dismiss are **GRANTED**.

## I. FACTUAL BACKGROUND[3]

Plaintiff JDM Group, LLC is the owner of commercial property located in Paterson, NJ. Compl. ¶ 1. PVWC is a municipal utilities authority owned and operated by Paterson and two other cities. *Id.* ¶ 2. On May 1, 2014, Plaintiff purchased property and assets out of the bankruptcy of Corel Dye & Fishing Company.[4] *Id.* ¶¶ 7-8. At that time, Corel Dye owed substantial debts to PVWC and Paterson for water and sewer charges as well as unpaid taxes. *Id.* at 1. Upon Plaintiff's purchase, $1,273,927.35 was placed in an escrow account "to be used to pay any outstanding balance for taxes, water, and sewer" for the property. *Id.* ¶ 8. Plaintiff claims that Paterson applied these funds to satisfy all of its outstanding liens through 2014 and PVWC received $31,940.25 from the bankruptcy proceedings for past due water charges. *Id.* ¶¶ 9-10. Although the date is not

---

[2] Plaintiff's Complaint will be referred to as "Compl." (D.E. 1); PVWC's brief in support of its motion will be referred to as "PVWC Br." (D.E. 9); Paterson's brief in support of its motion will be referred to as "Paterson Br." (D.E. 10); Passaic's brief in support of its motion will be referred to as "Passaic Br." (D.E. 19); Plaintiff's brief in opposition to PVWC's motion will be referred to as "Pl. Opp." (D.E. 11); and PVWC's reply brief will be referred to as "PVWC Reply" (D.E. 16).

[3] The factual background is taken from Plaintiff's Complaint, D.E. 1, as well as any documents referenced, relied on, or attached to Plaintiff's Complaint. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] Plaintiff now leases the property to American Fabric Processors, a dyeing and finishing entity. *Id.* ¶ 1. The current tenant of the property, American Fabric, is in the same business as Corel Dye, so it would seem that Plaintiff may have some form of historical baseline as to the monthly water costs. Plaintiff, however, does not provide any such information in its Complaint.

2

provided, at some point after purchasing the property and resuming dyeing operations, Plaintiff "deposited $10,000.00 for future water use with PVWC to continue service while the bankruptcy proceedings were finalized." *Id.* ¶ 12.

Plaintiff claims to not have received any water bills from PVWC for two years after purchasing the property. *Id.* ¶ 14. Plaintiff explains that PVWC continued sending bills to the prior owner, Corel Dye, until the beginning of July 2016, when Plaintiff received bills that "showed tens of thousands of dollars in water arrearages on five separate accounts allegedly providing service to the property." *Id.* ¶¶ 15, 28. Plaintiff states that it requested copies of bills for all accounts and total calculations of water arrearages from PVWC, but "PVWC refused to provide them." *Id.* ¶¶ 16-17. Plaintiff claims that PVWC instead provided conflicting oral estimates for the total amount owed to continue water services and allegedly stated that Plaintiff owed an additional $100,000. *Id.* ¶ 18.[5] Plaintiff does not dispute that it owed some amount for water charges, but alleges that "PVWC has failed to produce routinely maintained records to verify the amounts." *Id.* ¶ 20.

On October 26, 2016, PVWC cut off water services to Plaintiff's property. *Id.* ¶ 21. When Plaintiff requested billing records and cancellation notices, PVWC refused to provide them and instead demanded $63,000 to restore water service. *Id.* ¶¶ 22, 25. Additionally, Plaintiff alleges that PVWC denied having ever received payment from Plaintiff (including the $10,000 referenced above) and "denied and/or refused to confirm" receiving payment out of the bankruptcy proceedings. *Id.* ¶¶ 23-24. Plaintiff claims that after continually requesting billing records from PVWC it received "printouts from Microsoft Excel spreadsheets" on October 31, 2016 which, in

---

[5] To this end, the Complaint appears to indicate that Plaintiff's counsel may be a fact witness. *Id.* ¶¶ 25-27. Since no party raises the propriety of Plaintiff's counsel litigating this matter, the Court declines to do so *sua sponte*.

3

Plaintiff's characterization, "Defendant PVWC falsely identified as billing records[.]" *Id.* ¶¶ 25-27. PVWC then provided Plaintiff with copies of billing statements for charges after July 2016, but refused to provide billing records for the "alleged arrearages." *Id.* ¶ 35. On various occasions when Plaintiff offered to deposit funds with PVWC to compensate for the alleged arrearages, Plaintiff contends that PVWC refused the offers. *Id.* ¶¶ 19, 36. Plaintiff also alleges that attempts to meet with PVWC were unsuccessful. *Id.* ¶ 38.

On November 4, 2016, Plaintiff filed an Order to Show Cause and Civil Complaint with the Superior Court of New Jersey, Passaic County, Chancery Division against PVWC "alleging fraud, breach of contract, violation of the covenant of good faith and fair dealing, tortious interference with contract, and equitable estoppel[.]" *Id.* ¶ 39. Among other things, Plaintiff sought to compel PVWC to restore water service to the property. Plaintiff alleges that the records PVWC produced in response to Plaintiff's filing were false or fraudulent. *Id.* ¶¶ 40-41, 45, 47.

The matter was assigned to the Honorable Thomas J. LaConte, Presiding Judge of Chancery, who disclosed a potential conflict of interest with PVWC. *Id.* ¶ 51. Both parties consented to Judge LaConte overseeing the case. *Id.* ¶ 52. Initially, the court ordered water services restored and for PVWC to produce documentation substantiating the water charges. *Id.* Plaintiff alleges that after issuing this order, "[Judge LaConte] was reluctant to order Defendant PVWC to comply with [the court's] orders and left Defendant PVWC to choose what it wanted to disclose." *Id.* ¶ 53. Plaintiff alleges unfairness in the state proceeding regarding discovery matters. *Id.* ¶¶ 54, 56, 60-62. Yet, there was an evidentiary hearing during which at least two witness from PVWC testified; after the hearing, PVWC submitted "hundreds of pages worth of billing records[.]" *Id.* ¶¶ 58-60. On August 10, 2017, Judge LaConte issued a final judgment ordering Plaintiff to pay Defendant PVWC $71,000 in water charges. *Id.* ¶ 63-64; PVWC Br. Ex. E.

Plaintiff complains that this judgment was issued "in spite of the fact that Defendant PVWC never filed a counterclaim." *Id.*

Following the court's order, Plaintiff moved for reconsideration, but the motion was denied. *Id.* ¶ 65. Plaintiff alleges that PVWC later demanded amounts in excess of the court's order and threatened to shut off water services, which prompted Plaintiff to file a motion to vacate judgment. *Id.* ¶¶ 66-67. Plaintiff claims that in PVWC's opposition to its motion, PVWC brought forth documentation it had previously withheld which presented an "erroneous calculation" of what Plaintiff owed. *Id.* ¶¶ 69, 74. Plaintiff alleges that "PVWC deliberately presented false, fraudulent, and misleading documentation to the [c]ourt." *Id.* ¶¶ 75-76. Judge LaConte denied Plaintiff's motion. *Id.* ¶ 80.

Plaintiff claims that "[t]he [c]ourt's Final Order did not specifically dismiss Plaintiff's Complaint, effectively leaving an incomplete record that could already be described as tortured." *Id.* ¶ 81. Plaintiff alleges that the Superior Court's decisions were "the very definition of arbitrary and capricious" and meet "the definition of extrajudicial." *Id.* ¶ 82. There is no indication that Plaintiff appealed Judge LaConte's final judgment to the Appellate Division.

## II. PROCEDURAL HISTORY

On September 19, 2018, Plaintiff filed its Complaint against PVWC, Paterson, and Passaic, alleging violations of RICO, 18 U.S.C. § 1962(c). Compl. at 15. Specifically, Plaintiff alleges that PVWC "used the U.S. Postal Service to mail demand letters for alleged past due water charges to Plaintiff that it knows or should have known were invalid or non-existent charges, which constitutes mail fraud pursuant to 18 U.S.C. § 1341." Compl. ¶ 85. Plaintiff claims that PVWC and Paterson "are engaged in a scheme to extort money from water customers using false billing" and "to embezzle bankruptcy proceedings [sic] and have falsified records to hide it." *Id.* ¶¶ 87-

88. Further, Plaintiff alleges that Passaic "conspired or otherwise exerted political pressure to validate the above reference schemes through extrajudicial acts, giving said demands the color of law." *Id.* ¶ 89. Plaintiff asserts that all three Defendants "agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiff." *Id.* ¶ 90. Plaintiff claims that Defendants' acts of "extortion, fraud, mail fraud, official misconduct, abuse of office and perjury," injured Plaintiff in its business and property. *Id.* ¶¶ 91, 94.

On January 25, 2019, PVWC filed the first current motion to dismiss. D.E. 9. On that same date, Paterson filed its motion. D.E. 10. Plaintiff filed opposition, D.E. 11, to which PVWC replied, D.E. 16. On March 18, 2019, Passaic filed its motion. D.E. 19.

### III. LEGAL STANDARDS

All three Defendants bring their motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). PVWC and Passaic also bring their motions to dismiss pursuant to Rule 9(b). Defendants bring their 12(b)(1) motion for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. PVWC Br. at 4; Paterson Br. at 8; Passaic Br. at 8. Therefore, the Court will address the standards for motions pursuant to 12(b)(1), 12(b)(6), and 9(b).

<u>Rule 12(b)(1)</u>

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[6] A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis

---

[6] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998).

6

for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).[7]

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of

---

[7] Plaintiff cites the wrong standard of review. Pl. Opp. at 6. Plaintiff relies on the pre-*Twombly/Iqbal* notice standard. *Id.*

truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## IV. ANALYSIS

Defendants argue that Plaintiff fails to state any viable claim for relief against Defendants pursuant to 12(b)(6). PVWC Br. at 10-15; Paterson Br. at 6-8; Passaic Br. at 3-7. Defendants further assert that this Court lacks subject-matter jurisdiction based on the *Rooker-Feldman* doctrine. PVWC Br. at 4; Paterson Br. at 8; Passaic Br. at 8. The Court addresses each in turn.

### a. Failure to State a Claim Under 12(b)(6)

Defendants argue that Plaintiff's Complaint fails to properly plead a cause of action based on the Third Circuit's ruling in *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991). PVWC Br. at 10; Paterson Br. at 7; Passaic Br. at 7. The *Genty* court ruled that RICO claims cannot be maintained against municipalities:

> We thus hold that a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation. In so doing, we iterate that we perceive no intention of Congress to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities.

*Genty*, 937 F.2d at 914. Defendants allege that since each Defendant falls under the category of municipality or municipal entity for *Genty*'s purposes, Plaintiff is barred from asserting a RICO claim against Defendants as a matter of law. PVWC Br. at 10-12; Paterson Br. at 7; Passaic Br. at 7. In opposition, Plaintiff contends that "the Court in *Genty* was only concerned with the policy issue of whether a municipality could be held liable for treble damages, and preserved the possibility of bringing a RICO action against a municipal entity engaged in RICO activities." Pl. Opp. at 7. Therefore, Plaintiff argues that *Genty* does not bar Plaintiff from bringing a RICO claim against Defendants.

The Court finds that under *Genty*, a RICO claim cannot be maintained against Defendants. Like JDM, the plaintiff in *Genty* sought to separate the treble damages from the RICO claim at

9

large. The *Genty* plaintiff argued that "a district court could in its discretion award only compensatory damages against a municipality under section 1964(c)," thereby making it possible for RICO liability to be imposed upon municipalities. *Genty*, 937 F.2d at 914. The Third Circuit disagreed. The Circuit explained that "[i]t is clear that trial courts and juries are at no liberty under RICO to award any amount less than treble damages. The plain language of that statute instructs that injured persons 'shall recover' treble damages and costs and attorneys fees." *Id.* The court in *Genty* observed that "the prevailing punitive nature of section 1964(c)'s compulsory award of treble damages convinces us that Congress, in keeping with the common law, did not intend to subject municipal corporations to RICO liability." *Id.* As *Genty* represents binding precedent, the Court cannot bifurcate treble damages from the RICO claim, as urged by Plaintiff. *Genty* bars Plaintiff from asserting RICO claims against all three Defendants. *See also Kadonsky v. New Jersey*, 88 Fed. Appx. 81, 84-85 (3d Cir. 2006) (affirming the District Court's ruling that RICO claims "against Somerset and Hunterdon counties ... are barred because municipal entities are immune from suit under applicable federal and state law.") (citing *Genty*, 937 F.2d at 914)

In addition to *Genty*, Defendants argue that Plaintiff fails to plausibly allege a claim under the federal RICO statute. PVWC Br. at 12; Paterson Br. at 6; Passaic Br. at 3. To bring a federal civil RICO claim in accordance with 18 U.S.C. § 1962, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013). Plaintiff states that the relevant predicate acts for its RICO claim are "extortion, fraud, mail fraud,

official misconduct, abuse of office, and perjury." Compl. ¶ 92. Plaintiff's allegations of mail and wire fraud are subject to the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. 9(b).

The Court also finds that Plaintiff's factual allegations fall short of the requisite pleading standard. Plaintiff first fails to plead mail and wire fraud with the particularity required by Rule 9(b). To properly plead mail or wire fraud, plaintiffs must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may plead the specific misconduct along with the "date, place, or time," or plaintiffs may "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Plaintiff alleges that "Defendant PVWC used the U.S. Postal Service to mail demand letters for alleged past due water charges to Plaintiff that it knows or should have known were invalid or non-existent charges, which constitutes mail fraud pursuant to 18 U.S.C. § 1341." Compl. ¶ 85. The allegation fails to include specific dates, places, or times or inject precision or any measure of substantiation into the claim against PVWC.

Plaintiff also alleges that "Defendant Paterson knew or should have known of the bankruptcy proceedings and knew of Defendant PVWC's attempts to recover money it was not entitled to" and that both Paterson and PVWC "engaged in a scheme to extort money from water customers." *Id.* ¶ 86-87. The only evidence that Plaintiff appears to offer to support these claims against Paterson is that "Paterson holds a controlling stake" in PVWC. *Id.* Again, the allegations fall far short of the required particularity and are, in essence, entirely conclusory.

Plaintiff further pleads that Passaic "conspired with or otherwise exerted political pressure to validate the above referenced schemes through extrajudicial acts, giving said demands the color

11

of law." *Id.* ¶ 89. These allegations are also woefully inadequate. Plaintiff fails to provide any specifics as to the alleged conspiracy, such as dates or particulars as to the unlawful agreement. Similarly, Plaintiff provides no factual support to explain its claim of "political pressure." Further, Plaintiffs do not describe the alleged "extrajudicial" acts or when such acts occurred.

Of note, in its opposition, Plaintiff claims that "any defects in Plaintiff's pleading can be cured by amendment to the Complaint." Pl. Opp. at 7. Plaintiff states that if given leave to amend, Plaintiff could "easily" amend the Complaint to "add individual officers and employees of these municipal entities as individual defendants" in the form of John and Jane Doe defendants. *Id.* at 9. Plaintiff appears to state that it could bring such claims under 42 U.S.C. § 1983. *Id.* at 8. The argument is perplexing because Plaintiff does not assert a Section 1983 claim in its Complaint. Pursuant to *Gentry*, Plaintiff will not be able to replead its RICO claims as to Defendants. However, if Plaintiff believes that it can adequately assert a Section 1983 count or counts, the Court will give Plaintiff leave to file an amended complaint subject to the following analysis.

### b. 12(b)(1)

"The *Rooker–Feldman* doctrine precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments because such appellate jurisdiction rests solely with the United States Supreme Court." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 305, 315 (3d Cir. 2014). The *Rooker-Feldman* doctrine limits the subject-matter jurisdiction of this Court, and therefore is considered an issue of subject-matter jurisdiction under Rule 12(b)(1). *See Gary v. Braddock Cemetery*, 517 F.3d 195 (3d Cir.2008) (affirming 12(b)(1) dismissal based on *Rooker-Feldman* doctrine).

The Supreme Court addressed the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), and *Lance v. Dennis*, 546 U.S. 459 (2006). While the Supreme Court narrowed the scope of the doctrine in both cases, the Court made clear that the doctrine still applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance*, 546 U.S. at 464 (quoting *Exxon Mobil*, 544 U.S. at 284). The Third Circuit previously relied on a different test to determine whether the *Rooker-Feldman* doctrine applied to a subsequent federal suit. However, in light of *Lance* and *Exxon Mobil*, the Third Circuit concluded that "'caution is now appropriate in relying on our pre-*Exxon* formulation of the *Rooker–Feldman* doctrine,' which focused on whether the state and federal suits were 'inextricably intertwined.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Gary v. Braddock Cemetary*, 517 F.3d 195, 200 n.5 (3d Cir. 2008)).

The Third Circuit has ruled that the doctrine applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Defendants argue that all four elements are met, so Plaintiff's Complaint must be dismissed. PVWC Br. at 8-9; Paterson Br. at 9; Passaic Br. at 9-10. First, Plaintiff received an adverse final judgment in the Superior Court of Passaic County on August 10, 2017. PVWC Br. at 7. Second, Plaintiff complains of injuries caused by the state court judgment. *Id.* at 8. Third, the adverse state court judgment was rendered before Plaintiff filed in

13

this Court. Paterson Br. at 9. Fourth, Defendants claim that by alleging that the state court's judgment was "incomplete," "arbitrary and capricious," and "extrajudicial," Plaintiff is inviting the district court to review the state court's judgment. PVWC Br. at 9. Defendants also note that Plaintiff did not indicate that it appealed the state court judgment. Passaic Br. at 10. Defendants allege that "Plaintiff has essentially filed an appeal from the state court action" in this district court. PVWC Br. at 7.

Here, Plaintiff undoubtedly lost in state court and Judge LaConte's final judgment was clearly entered before the current matter was filed, satisfying the first and third elements. Generally, however, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining*, 615 F.3d at 166. The Third Circuit advises that "[t]he second requirement—that a plaintiff must be complaining of injuries caused by a state-court judgment—may also be thought of as an inquiry into the source of the plaintiff's injury." *Id.* at 166 (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir.2006). "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id. at* 167. The Third Circuit has explained that the fourth requirement is "closely related" to the second requirement, *id.* at 168, but that the fourth requirement is aimed at plaintiffs asking a federal district court to engage in "appellate review of state-court decisions or a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." *Id.* (internal citations and quotations omitted).

Plaintiff claims that the "references to proceedings in state court are not intended as a challenge to that decision, but as evidence that certain employees of the named defendants may be

14

engaged by intention or omission in a scheme to defraud Plaintiff, other customers of Passaic Valley Water Commission, and Passaic County taxpayers." Pl. Opp. at 9. Plaintiff also argues that it is not attempting to appeal or inviting this Court to review and reject the state court judgment. *Id.* The Court finds Plaintiff's arguments to be at odds with its allegations in the Complaint; the state court proceedings are featured prominently (and routinely attacked) in the Complaint. Plaintiff is clearly attempting to overturn Judge LaConte's decision. Yet, it is not clear that Plaintiff is *only* attempting to reverse the state court final judgment in the current suit.

To the extent Plaintiff is solely attempting to get relief from the state court final judgment, *Rooker-Feldman* clearly applies. Plaintiff unmistakably complains of alleged injuries from Judge LaConte's judgment and is inviting this Court to review and reject the state court judgment, satisfying both the second and fourth elements. However, Plaintiff's Complaint is not drafted in such a manner that this Court can definitively determine that Plaintiff is only complaining of the state court final judgment. Of course, as to issues that were litigated (or that could have been litigated in state court as transactionally related), the law of preclusion could nevertheless bar Plaintiff from raising such issues in this Court regardless of *Rooker-Feldman* and regardless of whether Plaintiff referenced the state court action.[8]

---

[8] "[A] federal court, in determining the [preclusive] effect of a state court proceeding, should apply the law of the state where the . . . proceeding took place[.]" *Taylor v. S.T. Good Ins.*, Inc., No. 10-4258, 2012 WL 83650, at *3 (D.N.J. Jan. 11, 2012) (quoting *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1987)). As a result, the Court would apply the preclusion law of New Jersey. "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Similar to *res judicata*, the entire controversy doctrine "extinguishes any subsequent federal-court claim that could have been joined but was not raised in the prior state action." *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *7 (D.N.J. May 12, 2016). Moreover, as to issues that were actually litigated, decided, and necessary to the state court final judgment, issue preclusion may apply. *See Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521 (2006); *Ivashenko v. Katelyn Court Co.*, 401 N.J. Super. 99, 109 (App. Div. 2008).

To the extent Plaintiff is seeking relief from the state court final judgment, *Rooker-Feldman* applies, and this Court does not have jurisdiction. However, because the Court cannot determine with certainty that Plaintiff is only seeking to have this Court review Judge LaConte's judgment, the Court does not find that *Rooker-Feldman* is a necessary bar to a future amended complaint by Plaintiff.[9]

## V. CONCLUSION

For the reasons stated above, the motions to dismiss filed by Defendants, D.E. 9-10, 19, are granted. Any attempt at amending RICO claims against the current Defendants would be futile. Moreover, any attempt to have this Court review and reverse the state court final judgment is beyond this Court's jurisdiction. However, because this is Plaintiff's initial pleading, the Court will give Plaintiff one additional opportunity, particularly because Plaintiff alluded to a different cause of action in its opposition brief. The Complaint is dismissed without prejudice. Plaintiff has thirty (30) days to file an amended complaint, if it so chooses, consistent with this Opinion. If Plaintiff fails to file an amended complaint within that time, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: December 4, 2019

John Michael Vazquez, U.S.D.J.

---

[9] To be clear, *Rooker-Feldman* may bar a future, amended complaint. The Court is merely indicating that it cannot say at this time that *Rooker-Feldman* will definitively do so.